IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHANNON LEE STARR, | ) | No. C 12-4400 RMW (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MEDICAL |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT; |
| | ) | GRANTING COUNTY |
| | ) | DEFENDANTS' MOTION FOR |
| ALAMEDA COUNTY, et al., | ) | SUMMARY JUDGMENT; |
| | ) | REFERRING CASE TO PRO SE |
| Defendants. | ) | PRISONER SETTLEMENT |
| | ) | PROGRAM |

Plaintiff, a California state civil detainee proceeding pro se, brought the instant civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Fourteenth Amendment right to medical care. Finding that the second amended complaint, liberally construed, stated a cognizable claim, the court ordered service upon defendants. Defendants Alameda County and Sheriff Gregory Ahern ("County defendants") filed a motion for summary judgment. Defendants Drs. Chen, Newell, Orr, Melgarejo, and Barber ("Medical defendants") have also filed a motion for summary jugdment.[1] Plaintiff has filed an opposition to the motions, stating that the exhibits to his second amended complaint demonstrate that there are material

---

[1] Defendants' motion to seal plaintiff's medical records is granted. (Docket No. 53.)

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

1  facts in dispute. Defendants have filed separate replies.

2  For the reasons stated below, after a review of the record, the court concludes that
3  Medical defendants' motion for summary judgment is granted in part and denied in part. County
4  defendants' motion for summary judgment is granted. Because defendants Drs. Pompey and
5  Gabarow, and Nurse Practitioner Mastroianni have not yet been served in this action, plaintiff
6  will be directed to provide a current and accurate location in order to effectuate service.

## BACKGROUND[2]

8  Since May 29, 2009, plaintiff has been a pretrial detainee, housed at the Alameda County
9  Jail pending an involuntary civil commitment. (Sec. Am. Compl. ¶¶ 1, 5.) At the time plaintiff
10 filed his second amended complaint, he was 51-years old, and confined to a wheelchair as a
11 result of a gunshot wound and vehicle accidents. (Id. ¶ 5.) Since 1989, plaintiff has been treated
12 with multiple medications, including methadone, oxycotin, and morphine, in an effort to control
13 plaintiff's chronic and severe pain to his back, neck, and legs. (Id.) When plaintiff arrived at the
14 Alameda Jail, he informed the intake nurse about his current medical condition, including a list
15 of his current medications for treating his pain, chronic hypertension, asthma, heart, dental, and
16 skin condition. (Id. ¶ 6.) Plaintiff also told her that he had previously been treated for an
17 enlarged prostate and was being monitored for his kidney disease. (Id.)

18 On plaintiff's first night at the jail, a nurse delivered plaintiff's medication, which did not
19 include any pain medication, antibiotics for plaintiff's oral abscess, nitroglycerin for his heart, or
20 ointment for plaintiff's chronically dry skin. (Id. ¶ 7.) In addition, plaintiff only received a
21 fraction of the blood pressure medication that he normally took. (Id.) Plaintiff informed the
22 nurse, who told plaintiff that the medication she dispensed was the only medication ordered by
23 the doctor on duty. (Id. ¶¶ 8-9.) As a result, plaintiff submitted a sick call slip and was seen by a
24 doctor approximately 7-8 days later. (Id. ¶ 10.) Plaintiff informed this doctor that he was in
25 excruciating pain because he had not been given any pain medication for over a week, that

---

[2] The following facts are taken in the light most favorable to plaintiff and are undisputed unless otherwise indicated.

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

2

plaintiff had not received any of the other medication he had been receiving for his dry skin, his heart condition, his blood pressure management, and that plaintiff had kidney disease and an enlarged prostate. (Id.) The doctor refused to order any pain medication for plaintiff, and informed plaintiff that he would recommend plaintiff see a urologist for his kidney and blood pressure issues. (Id. ¶ 11.)

Plaintiff subsequently submitted many sick call slips requesting pain medication, an increase in blood pressure medication, blood pressure and kidney level check-ups, a refill of his skin ointment, and a prostate check-up, but none of the sick call slips were answered. (Id. ¶¶ 12-15.) Plaintiff filed grievances for each of these unanswered sick call slips, but each grievance was denied. (Id.)

I.  Dental claim facts

In August 2009, after a state court judge ordered that plaintiff be seen by medical staff for an abscessed tooth that was causing him pain, plaintiff was seen by Defendant Dr. Barber on August 20, 2009. (Id. ¶¶ 16-17; Barber Decl. ¶ 3.) Dr. Barber verified that plaintiff had an abscessed tooth, some cavities, and other problems, and noted that while plaintiff's teeth could be saved, she only extracted teeth and did not do any kind of other work, including cosmetic work. (Sec. Am. Compl. ¶¶ 17-18.) Plaintiff asked Dr. Barber for pain medication and antibiotics for the abscess, but Dr. Barber refused. (Id. ¶ 19.)

In January 2011, plaintiff lost a crown on a tooth, leaving only the metal post. (Id. ¶ 20.) The unit nurse called the dental department and explained that plaintiff was in pain and needed to see the dentist on an emergency basis. (Id.) Plaintiff was not seen by the dentist for approximately six months, until June 3, 2011. (Id. ¶ 21.) Dr. Barber refused to remove the metal post even after plaintiff told her he was in pain and the post was stabbing his tongue. (Id.) Dr. Barber told plaintiff that he was only there for an annual exam. (Id.) Dr. Barber then provided plaintiff with some wax to cover the metal post, but refused to provide plaintiff with pain medication or antibiotics for the abscess. (Id.)

On November 29, 2011, plaintiff's porcelain filling fell out from his mouth, but plaintiff

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd
3

saved it and put in a sick call slip. (Id. ¶ 22.) Plaintiff was not seen by medical staff regarding this issue until June 4, 2012. (Id. ¶ 23.) On that day, Dr. Barber said she would not put the filling back in, would not remove the metal post, and would not order pain medication or antibiotics. (Id.) Dr. Barber stated that in order to remove the post, she would have to cut into plaintiff's jaw bone, and she was not about to "do all of that." (Id.) Again, Dr. Barber refused to order pain medication or antibiotics for plaintiff. (Id.)

Plaintiff continued to submit more sick call slips and file grievances, complaining that his gums continued to hurt, blood was coming from both areas where the crown and filling fell out, and another part of plaintiff's tooth was coming loose. (Id. ¶ 24.) Plaintiff finally saw the dentist again on May 15, 2013. (Id. ¶ 25.)

II.  Medical claim facts

Around September 2011, plaintiff started having involuntary muscle spasms over his body. (Id. ¶ 26.) After filling out sick call slips and filing grievances, plaintiff saw Defendant Dr. Pompey on May 10, 2012. (Id.) Plaintiff told him that he was in constant severe pain in his back, neck, and legs. (Id.) Plaintiff informed him that, with the exception of one or two occasions, plaintiff had received no pain medication for over two years and even then, plaintiff was only prescribed with aspirin. (Id.) Dr. Pompey informed plaintiff that he would not prescribe anything stronger than extra strength Tylenol. (Id. ¶ 27.) Without examining plaintiff, Dr. Pompey stated that he did not know what was causing the muscle spasms, and ended the appointment. (Id.) Plaintiff did not receive Dr. Pompey's order of extra strength Tylenol for almost two months, and even then, the prescription only lasted less than two weeks. (Id.)

Plaintiff asserts that after he saw Dr. Pompey, he also saw Dr. Chen, Dr. Gabarow, Dr. Orr, Dr. Newell, Dr. Mastroianni, and Dr. Melgarejo. (Id. ¶ 28.) None of them gave plaintiff adequate pain medication to control his chronic back, neck, and leg pain. (Id.) Plaintiff further alleges that none of them examined him or tried to determine the cause of plaintiff's muscle spasms, which have increased in both frequency and intensity. (Id.)

///

# DISCUSSION

## A. Standard of Review

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, when defendants move for summary judgment on an affirmative defense on which they bear the burden of proof at trial, they must come forward with evidence which would entitle them to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence on a disputed material fact. See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## B. Rule 56(d)

In plaintiff's opposition, he appears to also request a stay of proceedings so that he may have an opportunity to conduct full discovery. (Docket No. 65.) Federal Rule of Civil Procedure 56(d) is a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987). In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998); see, e.g., id. at 853-54 (district

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

5

1  court correctly denied motion for continuance to engage in further discovery under Rule 56(d)
2  where plaintiff did not provide any basis or factual support for his assertions that further
3  discovery would lead to the facts and testimony he described, and his assertions appeared based
4  on nothing more than "wild speculation").  Rule 56(d) requires that the requesting party show (1)
5  it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the
6  facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment.
7  Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 822,
8  827 (9th Cir. 2008).

9  Here, plaintiff requests an indefinite extension of time in which to conduct discovery and
10 oppose defendants' motions for summary judgment.  Plaintiff does not demonstrate how any
11 "additional discovery would [] reveal[] specific facts precluding summary judgment," see Tatum
12 v. City and County of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006), or how the sought-after facts
13 are essential to oppose summary judgment, Family Home and Finance Center, Inc., 525 F.3d at
14 827.  Nor does he specify what facts he hopes to elicit.  Moreover, defendants point out that
15 plaintiff has not served any discovery requests upon them despite the fact that plaintiff has been
16 permitted to conduct discovery from the moment the court ordered service upon defendants in
17 May 2013.  Finally, it is not apparent to this court why plaintiff would need to conduct discovery
18 to oppose defendants' motions for summary judgment which argue only that plaintiff has failed
19 to exhaust his administrative remedies.  Thus, plaintiff is not entitled to a continuance for the
20 purpose of conducting additional discovery pursuant to Rule 56(d).

21 **C.**     **Analysis**

22 When a pretrial detainee challenges conditions of his confinement, the proper inquiry is
23 whether the conditions amount to punishment in violation of the Due Process Clause of the
24 Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  Even though
25 pretrial detainees' claims arise under the Due Process Clause, the Eighth Amendment serves as a
26 benchmark for evaluating those claims.  See Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996).
27 The Ninth Circuit has determined that the appropriate standard for evaluating constitutional

28 Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

claims brought by pretrial detainees is the same one used to evaluate convicted prisoners' claims under the Eighth Amendment. Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) (citation omitted). See, e.g., Carnell, 74 F.3d at 979 (standard of deliberate indifference applicable to pretrial detainees' medical claims).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060.

I.      Dental claim

Plaintiff claims that defendants' response to his dental issues exhibited deliberate indifference to his serious dental needs. Although the moving party for summary judgment bears

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

7

the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact, see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), defendants offer no specific argument regarding plaintiff's claim with respect to dentist Dr. Barber's liability.

However, defendants do submit Dr. Barber's declaration which may be considered as evidence in support of defendants' motion for summary judgment. See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001).[3] In Dr. Barber's declaration, she submits that she saw plaintiff eight times over the course of approximately four years. In that time, plaintiff's dental problems worsened progressively. Initially, at Dr. Barber's first visit with plaintiff, on August 20, 2009, plaintiff reported having an abscess and tooth ache for the past six months. (Barber Decl. ¶ 4.) Dr. Barber found that plaintiff had a "fistula" at tooth #29 that was not draining, and tooth #30 seemed to have a failing root canal. (Id.) Dr. Barber told plaintiff that the treatment for a fistula were a root canal, post, and crown procedure, or, an extraction, however, Dr. Barber only offered to perform the extraction. (Id.) Plaintiff did not want an extraction because he wished to keep his teeth. Dr. Barber prescribed plaintiff Tylenol for seven days. (Id.)

At the second appointment, June 24, 2010, Dr. Barber noted the same issues with tooth #29 and #30. (Id. ¶ 5.) Plaintiff again refused extractions. (Id.) At plaintiff's third appointment, his annual examination, on June 6, 2011, plaintiff reported pain in tooth #4. (Id. ¶ 7.) Dr. Barber scheduled plaintiff for potential treatment of tooth #4. (Id.) At plaintiff's fourth appointment, on July 6, 2011, plaintiff reported sharp and constant pain in tooth #4 for the previous seven months. (Id. ¶ 8.) Dr. Barber noted that what remained of tooth #4 was a post

---

[3] Defendants have also filed over 1300 pages of plaintiff's medical records in support of their motion for summary judgment. (Docket No. 53.) However, there appears to be no rhyme or reason to the organization of these records. They are not in chronological order; they are not limited to the relevant time period challenged in this litigation; and defendants do not cite to these records in their declarations or their motion for summary judgment. Thus, the medical records will not be relied upon because defendants have not met their burden of identifying for the court the portions of the medical record that they believe "demonstrate the absence of a genuine issue of material fact." See Celotex v. Corp., 477 U.S. at 323.

1  from a previous crown, and she recommended extraction. (Id.) Plaintiff requested removal of
2  the post, but Dr. Barber declined because of the risks involved in removal. (Id.) Dr. Barber gave
3  plaintiff "ortho wax" to place around the post to relieve irritation. (Id.)

4      At plaintiff's fifth appointment, on June 4, 2012, for plaintiff's annual exam, Dr. Barber
5  noted that tooth #29 and #30 remained in the same condition, and that tooth #19 and #20 had
6  significant decay which could not be repaired with fillings. (Id. ¶ 10.) Dr. Barber believed that
7  either a root canal and crown procedures, or extraction were the proper treatment options, but
8  she only offered extraction. (Id.) Plaintiff refused extraction. (Id.)

9      At plaintiff's sixth appointment on May 15, 2013, plaintiff complained of pain around
10 tooth #30 and #31. (Id. ¶ 14.) Dr. Barber's recommendation was extraction of both teeth, which
11 plaintiff refused. (Id.) At plaintiff's seventh and eighth appointments, Dr. Barber attempted to
12 extract tooth #31, but was unable to adequately anesthetize plaintiff so requested that plaintiff be
13 seen by an oral surgeon. (Id. ¶¶ 15-17.) On July 8, 2013, oral surgeon. Dr. Shimel, extracted
14 plaintiff's tooth #31. (Id. ¶ 18.)

15     To the extent plaintiff argues that Dr. Barber should have offered to perform cosmetic or
16 other type of treatment rather than extraction, plaintiff's argument is insufficient to defeat
17 summary judgment. Defendants have provided evidence that an extraction of plaintiff's affected
18 teeth – even the ones that were salvageable – met dental standards of care. (Barber Decl. ¶ 22.)
19 Plaintiff may have preferred a root canal or other type of procedure to keep his teeth, however,
20 plaintiff's opinion regarding best course of treatment is insufficient to establish deliberate
21 indifference. See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004). Moreover,
22 plaintiff has not submitted any evidence that the course of treatment Dr. Barber chose was
23 medically unacceptable under the circumstances and that she chose this course in conscious
24 disregard of an excessive risk to plaintiff's health. Id. at 1058. Accordingly, defendants are
25 entitled to summary judgment on Dr. Barber's recommendations to extract plaintiff's teeth.

26     However, defendants do not address the Dr. Barber's liability regarding the delay in

27
28
Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

9

treatment[4] and the denial of plaintiff's requests for pain medication or antibiotics. Thus, the court denies defendants' motion for summary judgment with respect to those issues.

II.     Medical claims

Plaintiff alleges that defendant doctors have been deliberately indifferent to his chronic neck, leg, and back pain and have not determined the cause of plaintiff's involuntary muscle spasms. (Sec. Am. Compl. ¶ 28.) However, Medical defendants have provided declarations demonstrating that the course of treatment they provided with regard to plaintiff's request for pain management and plaintiff's involuntary muscle spasms were within the appropriate range of treatment, and they did not choose those treatments in conscious disregard of an excessive risk for plaintiff's health.

Defendants provide undisputed evidence that, on June 10, 2009, non-defendant Dr. Nahkla prescribed Vicodin to plaintiff for a period of five days for plaintiff's chronic low back pain. (Orr Decl. ¶ 4.) A month later, plaintiff requested stronger pain medication, and saw Dr. Orr. (Id. ¶¶ 5-6.) Dr. Orr noted that he would check plaintiff's old prescriptions. One week later, plaintiff saw Dr. Chen and asked for morphine. (Id. ¶ 8.) Dr. Chen recognized that plaintiff had chronic pain and offered to prescribe Gabapentin or Vicodin. (Id.) Plaintiff was unable to choose and told Dr. Chen that he would return to the following day to decide, however, plaintiff never did so. (Id. ¶¶ 8-9.)

On November 3, 2009, plaintiff submitted a health request form asking for pain medication. (Id. ¶ 9.) Plaintiff asked for Tylenol 3. (Id.) There is no indication that any changes were made after plaintiff's chart was reviewed. (Id.)

On July 2, 2012, plaintiff submitted a medical request form requesting pain medication for plaintiff's back injury. (Id. ¶ 10.) Plaintiff also complained of muscle spasms and other things. (Id.) Although plaintiff alleges that he had submitted many sick call slips that went

---

[4] On at least three separate occasions (Sec. Am. Compl. ¶ 21; Barber Decl. ¶¶ 9, 12), the undisputed facts viewed in the light most favorable to plaintiff show that the time between plaintiff's request for dental services and plaintiff's appointments with Dr. Barber, which Dr. Barber scheduled, were approximately six months. (Barber Decl. ¶¶ 9, 12.)

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

unanswered, defendants have no record of any requests for medical visits for plaintiff's back pain from November 3, 2009 through July 2, 2012. (Id.) Moreover, plaintiff does not provide any evidence that defendants received these requests.

On July 6, 2012, plaintiff requested pain medicine for his back, and Dr. Pompey gave his verbal authorization for Tylenol for fourteen days. (Id.) On July 31, 2012, plaintiff saw a nurse and complained of severe back pain and reported that the Tylenol was not helping. (Id. ¶ 12.) On August 8, 2012, plaintiff was seen by Dr. Pompey where he complained of back pain and intermittent spasms. (Id. ¶ 13.) Dr. Pompey's examination revealed no current spasm, but ordered Vicodin for fourteen days. (Id.)

On August 27, 2012, plaintiff requested a morphine patch for his back and ankle pain. (Id. ¶ 14.) Non-defendant Dr. Aramburo detected no obvious cause of pain, but agreed to start plaintiff on a thirty day cycle of Gabapentin. (Id.) In November 2012, plaintiff complained that the Gabapentin was not helping, and he received a fourteen day prescription for Norco. (Id. ¶ 15.)

On December 12, 2012, plaintiff saw Dr. Chen and requested discontinuation of the Gabapentin and an increase of Norco. (Id. ¶ 16.) Dr. Chen agreed to discontinue the Gabapentin, and told plaintiff she would discuss pain management with Dr. Orr. (Id.) The following day, Dr. Orr increased plaintiff's Norco for thirty days. (Id. ¶ 18.) Plaintiff's Norco level stayed there until October 18, 2013. (Id.) A few days thereafter, plaintiff's Norco prescription was increased again, and has remained at this increased level up until at last March 2014. (Id.)

Plaintiff has failed to provide evidence disputing that Dr. Chen, Dr. Orr, Dr. Newell, and Dr. Melgarejo's choices regarding the type and amount of pain management were nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another. In addition, plaintiff provides no evidence that Dr. Chen, Dr. Orr, Dr. Newell, or Dr. Melgarejo denied, delayed, or interfered with plaintiff's medical care. See McGuckin, 974 F.2d at 1062. Thus, plaintiff's claim is insufficient, as a matter of law, to establish deliberate indifference or to demonstrate that the choices were medically unacceptable under the

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

11

1  circumstances, and that they chose these options in conscious disregard of an excessive risk to
2  plaintiff's health.  See Toguchi, 391 F.3d at 1058-60.
3      With respect to plaintiff's claim that Dr. Chen, Dr. Orr, Dr. Newell, and Dr. Melgarejo
4  failed to treat his muscle spasms, plaintiff has failed to provide evidence disputing defendants'
5  allegations that plaintiff did not complain of muscle spasms to them, and they were unaware of
6  plaintiff's complaints of muscle spasms.  (Chen Decl. ¶¶ 6-10; Newell-Harris Decl. ¶¶ 4-7;
7  Melgarejo Decl. ¶¶ 3-6; Orr Decl. ¶¶ 20-29.)  Even assuming that involuntary muscle spasms
8  were a serious medical need, plaintiff has provided no specific evidence that these defendants
9  were "aware of facts from which the inference could be drawn that a substantial risk of serious
10 harm exist[ed]," and that they drew the inference.  See Farmer, 511 U.S. at 837.

11     III.   County defendants

12     Plaintiff generally claims that because of the policies and practices of "defendants," and
13 their failure to train their employees, plaintiff's right against cruel and unusual punishments
14 regarding his serious medical needs was violated.  (Sec. Am. Compl. ¶¶ 70-71, 76.)  County
15 defendants respond that plaintiff points to no custom or policy that would give rise to such a
16 claim, and that Sheriff Ahern did not personally participate in any of plaintiff's allegations.

17     It is well established that "a municipality cannot be held liable solely because it employs
18 a tortfeasor" or, in other words, a municipality cannot be held liable under § 1983 on a
19 respondeat superior theory.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658,
20 691 (1978).  For the County to be liable under § 1983, a municipal "policy or custom" must have
21 caused the constitutional injury.  Id. at 694.  This "policy can be one of action or inaction.
22 Waggy v. Spokane Cnty. Washington, 594 F.3d 707, 713 (9th Cir. 2010) (citations omitted).
23 "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the
24 municipality," however; "[t]he plaintiff must also demonstrate that, through its deliberate
25 conduct, the municipality was the "moving force" behind the injury alleged."  Bd. of Cnty.
26 Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997).

27     Here, plaintiff does not identify conduct properly attributable to the County, nor does he

28 Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

provide facts leading to a reasonable inference that the County, through its deliberate conduct, was the moving force behind any injury. Plaintiff merely states in conclusory fashion that the County had customs and polices that violated his Fourteenth Amendment right, and that the County failed to train its employees.

Municipal liability may be established in any one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotation marks omitted). Even liberally construing plaintiff's second amended complaint, plaintiff has not provided any evidence to support any of these three factors.

Despite having had the opportunity to conduct discovery, plaintiff has provided no factual support for these conclusory allegations, such as evidence pointing to the existence of an unconstitutional policy or custom, beyond a recitation of the facts underlying plaintiff's allegations against medical defendants in his second amended complaint. Plaintiff's allegations are insufficient to establish liability. "Only if a plaintiff shows that his injury resulted from a "permanent and well settled" practice may liability attach for injury resulting from a local government custom." Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989). Here, plaintiff has failed to raise a genuine issue of material fact that medical defendants' conduct was pursuant to an unconstitutional "policy or custom" as required to hold the County liable under § 1983. See, e.g., Waggy, 594 F.3d at 713-14 (affirming summary judgment for county where plaintiff failed to provide any evidence of county policy, practice or custom, or of inadequate training and supervision that caused the alleged constitutional injury); McSherry v.

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

1  City of Long Beach, 584 F.3d 1129, 1147 (9th Cir. 2009) (affirming summary judgment for city
2  in § 1983 action where plaintiff failed to tender facts of policy or custom other than officers'
3  alleged personal misdeeds). Specifically, plaintiff does not allege that the county had any policy
4  or custom regarding medical needs; he provides no evidence that any procedure or lack of
5  procedure exists; and more importantly, he fails to refute County defendants' evidence of its
6  policies and procedure regarding its sick and dental calls.  (Vandagriff Decl., Ex. B.)

   With respect to plaintiff's allegation that County defendants failed to train its employees,
plaintiff fails to provide any evidence indicating what training practices were employed by the
County at the time of the alleged violation, or what type of constitutionally-mandated training
was lacking. See Waggy, 594 F.3d at 713-14. This failure is fatal to his claim. See id.

   With respect to Sheriff Ahern's liability, "[a] supervisor is liable under § 1983 for a
subordinate's constitutional violations "if the supervisor participated in or directed the
violations, or knew of the violations and failed to act to prevent them." Maxwell v. Cnty. of San
Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th
Cir. 1989)). Supervisory liability can also exist when there is "a sufficient causal connection
between the supervisor's wrongful conduct and the constitutional violation," such as when
"supervisory officials implement a policy so deficient that the policy itself is a repudiation of
constitutional rights and is the moving force of the constitutional violation." Hansen v. Black,
885 F.2d 642, 646 (9th Cir. 1989); see also Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)
("A plaintiff may state a claim against a supervisor for deliberate indifference based upon the
supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her
subordinates.").

   Here, plaintiff does not allege that Sheriff Ahern participated in or directed any alleged
violations, nor that he knew about any violations and failed to act. There is no evidence that
Sheriff Ahern knew about plaintiff's complaints, or had the requisite state of mind to establish
liability. Ashcroft v. Iqbal, 566 U.S. 662, 1074-75 & n.18. Moreover, plaintiff does not allege
that Sheriff Ahern implemented any deficient policy, or otherwise performed any wrongful

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

1  conduct. Thus, Sheriff Ahern is entitled to summary judgment.

2  Accordingly, County defendants are entitled to summary judgment.

3  **D.    Referral to Pro Se Prisoner Settlement Program**

4  Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff
5  for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the
6  Pro Se Prisoner Settlement Program for settlement proceedings on the excessive force claim set
7  forth above, as well as plaintiff's state law claims. The proceedings will consist of one or more
8  conferences as determined by Judge Vadas. The conferences shall be conducted with Dr.
9  Barber, or her representative, attending by videoconferencing if she so chooses. If these
10 settlement proceedings do not resolve this matter, the court will then set this matter for trial and
11 consider a motion from plaintiff for appointment of counsel.

12 **CONCLUSION**

13 1. Medical defendants' motion for summary judgment is GRANTED IN PART and
14 DENIED IN PART. The motion is GRANTED as to Dr. Chen, Dr. Orr, Dr. Newell, and Dr.
15 Melgarejo. The motion is DENIED as to Dr. Barber. County defendants' motion for summary
16 judgment is GRANTED.

17 2. The court notes that Dr Pompey, Dr. Gabarow, and Nurse Mastroianni have not
18 been served. Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely
19 on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate
20 such service"; rather, "[a]t a minimum, a plaintiff should request service upon the appropriate
21 defendant and attempt to remedy any apparent defects of which [he] has knowledge." Rochon v.
22 Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987). Here, plaintiff's complaint has been pending for
23 over 120 days, and thus, absent a showing of "good cause," is subject to dismissal without
24 prejudice. See Fed. R. Civ. P. 4(m).

25 Because plaintiff has not provided sufficient information to allow the Marshal to locate
26 and serve Dr. Pompey, Dr. Gabarow, or Nurse Mastroianni, plaintiff must remedy the situation
27 or face dismissal of his claims against these defendants without prejudice. See Walker v.

28 Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

1  Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (holding prisoner failed to show cause why
2  prison official should not be dismissed under Rule 4(m) where prisoner failed to show he had
3  provided Marshal with sufficient information to effectuate service).
4        Accordingly, if plaintiff fails to provide the court with an accurate and current location
5  for these defendants within **thirty (30) days** of the date this order is filed, plaintiff's claims
6  against these defendants will be dismissed without prejudice pursuant to Rule 4(m) of the
7  Federal Rules of Civil Procedure.
8        3.     The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner
9  Settlement Program for settlement proceedings on the claims in this action, as described above.
10 The proceedings shall take place within one-hundred twenty (120) days of the filing date of this
11 order.  Judge Vadas shall coordinate a time and date for a settlement conference with all
12 interested parties or their representatives and, within ten (10) days after the conclusion of the
13 settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.
14 If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion
15 for appointment of counsel, and the court will then set this matter for trial.
16       4.     The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka,
17 California.
18       5.     The instant case is STAYED pending the settlement conference proceedings. The
19 clerk shall ADMINISTRATIVELY CLOSE this case until further order of the court.
20       IT IS SO ORDERED.
21 DATED: _____

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Granting In Part and Denying in Part Medical Defendants' Motion for Summary Judgment; Granting County
Defendants' Motion for Summary Judgment: Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Starr400msj.wpd

16

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SHANNON LEE STARR,

         Plaintiff,

  v.

ALAMEDA COUNTY, et al,

         Defendant.

Case Number: CV12-04400 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 11, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Shannon Lee Starr ALJ 123/2-F-8
Alameda County Santa Rita Jail
5325 Broder Boulevard
Dublin, CA 94568

Dated: February 11, 2015

                                          Richard W. Wieking, Clerk
                                          By: Jackie Lynn Garcia, Deputy Clerk